## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-21427-CIV-KING

GREAT AMERICAN INSURANCE, CO.,

     Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.,
a Pennsylvania corporation, and
LEXINGTON INSURANCE COMPANY,
a Delaware corporation as the insurers of
their additional insured, General Asphalt
Company, a Florida corporation.

     Defendants.

_____/

## ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court upon (1) the Defendant National Union

Insurance Company's ("National Union") Cross-Motion for Summary Judgment (DE

#125) concerning its counterclaim seeking reimbursement of sums it paid to settle claims

against General Asphalt during the underlying litigation and (2) the Defendant Lexington

Insurance Company's ("Lexington") Motion for Summary Judgment (DE #135)

concerning Great American Insurance Company's ("Great American") claim against

Lexington for attorney fees and costs. These motions have been fully briefed. After

careful consideration of the written submissions and relevant case and statutory law, the

Court concludes that National Union and Lexington are entitled to judgment as a matter

1

of law and grants both National Union's Motion for Summary Judgment and Lexington's Motion for Summary Judgment.

Factual Background

Great American filed a declaratory judgment action against National Union and Lexington as the insurers of the additional insured, General Asphalt Company, Inc. ("General Asphalt"), asking the Court to determine (1) the meaning of the phrase "maintenance of traffic" in a contract entered into by General Asphalt and Bob's Barricades ("Bob's") on May 1, 2002 ("the Subcontract"), (2) whether National Union was liable for the settlement amounts paid during the underlying litigation against General Asphalt, and (3) whether Lexington was liable for Great American's attorney fees and costs to defend General Asphalt during the underlying litigation.

This case arises from the settlement of an action in a Florida state court in which Mayra Suarez, as guardian of Yurely Pearce and Jennifer B. Morales-Pearce, a minor, sued General Asphalt and Bob's Barricades for negligent maintenance of traffic through a "work zone" area  (the "Suarez lawsuit")[1].  According to the Complaint in the underlying state action, Yurely Pearce was driving on State Road 836 when she lost control of her car and struck an asphalt roller parked on the shoulder of State Road 836 between NW 57th Avenue and NW 72nd Avenue in Miami, Florida.  In the underlying suit, it was

---

[1]*Mayra Suarez, as Guardian of Yurely Pearce, et al. v. General Asphalt Co., Inc. and Bob's Barricades, Inc.,* 02-30115 CA 21.

alleged that both Bob's Barricades and General Asphalt were each negligent in the performance of the maintenance of traffic on State Road 836 and that, as a direct and proximate result of the negligence of Bob's and General Asphalt, Yurely Pearce was injured.

On January 24, 2005, the underlying case proceeded to jury trial before the Honorable Frederica Smith.  After Judge Smith ruled on multiple motions in limine, the underlying Plaintiffs and Bob's settled for the sum of $1 million (the "Bob's Settlement Agreement").[2]  In the Bob's Settlement Agreement, the underlying Plaintiffs released any future claims against any other parties on the basis of vicarious liability arising from Bob's actions.  General Asphalt and Great American assert that they were unaware of the terms of the Bob's Settlement Agreement at any time prior to the instant action.  After the Bob's Settlement Agreement was finalized, the trial between the underlying Plaintiffs and General Asphalt continued for two weeks through jury selection, the Plaintiffs' case, and a case of the defense, until the underlying Plaintiffs and General Asphalt agreed to a settlement in open court on February 3, 2005.  A final, fully executed settlement agreement was entered into by the underlying Plaintiffs and General Asphalt on April 14, 2005 (the "General Asphalt Settlement Agreement"), for the sum of $7.25 million.

According to the General Asphalt Settlement Agreement, General Asphalt, "by

---

[2]Lexington paid the amount of this settlement, in accordance with its coverage policy with Bob's.

3

and through *certain* insurers, shall pay the sum of Seven Million Two Hundred and Fifty Thousand Dollars ($7,250,000.00) on or before April 30, 2005 . . . . As part of the settlement sum, National Union . . . will make *a payment of* . . . $3,125,000.00 . . . . Liberty Mutual Incorporated will pay $3,000,000.00 of the total settlement sum, and Great American . . . will pay $1,125,000.00 of the total settlement sum. *No payment shall constitute an admission or waiver of any kind."* (General Asphalt Settlement Agreement, pg. 3, ¶ 3).

On May 27, 2005, Great American filed the instant action, seeking declaratory judgment that the "[Great American] Excess Policy was not required to provide coverage for and to pay any portion of the settlement in the [Suarez lawsuit] and that [Great American] is entitled to and shall recover from National Union . . . the sum of $1.125 million paid as a part of the settlement with Mayra Suarez."[3] In its Amended Complaint, Great American states that the settlement payments "were made without prejudice to [the insurance companies'] right to a subsequent determination as between those insurers and National Union and Lexington as to whether the coverage of Great American was ever properly available and at risk in the action brought by Mayra Suarez and whether the amounts paid by Liberty Mutual were properly apportioned and allocated between the insurers." (Amended Complaint, pg. 15, ¶ 41). On September 28, 2007, this Court

---

[3] On September 13, 2005, Great American filed an Amended Complaint [D.E. #23]. This Declaratory Judgment claim, however, was not amended.

4

granted National Union's Motion for Summary Judgment concerning the claim that
National Union should reimburse Great American for the amount that Great American
paid as part of the General Asphalt Settlement Agreement.  The Court reasoned that, even
if General Asphalt was covered as an additional insured under the National Union Policy,
National Union could not be responsible for more than its pro rata share of the General
Asphalt Settlement Agreement, which it had already paid.  In addition to its claim against
National Union, Great American also filed a claim against Lexington, alleging that
Lexington had the duty to defend General Asphalt in the underlying lawsuit and seeking
to recover attorney's fees and costs incurred by Great American in its defense of General
Asphalt.  Lexington filed its Answer to the Amended Complaint on September 30, 2005,
denying that it had a duty to defend General Asphalt in the underlying action because,
*inter alia*, the allegations in the Complaint for that action did not fall within the coverage
of Lexington's Policy.  National Union filed an Amended Counterclaim on October 18,
2005, seeking to recover the $3,125,000.00 it paid to fund the settlement and declaratory
relief that, *inter alia*, General Asphalt is not covered as an additional insured under the
National Union Policy.

Standard of Review

    Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment
where the pleadings and supporting materials establish that there is no genuine issue as to
any material fact and that the moving party is entitled to judgment as a matter of law.  *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court's focus in reviewing a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). The moving party has the burden to establish the absence of a genuine issue as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Tyson Foods, Inc.*, 121 F.3d at 646. Once the moving party has established the absence of a genuine issue of material fact, to which the nonmoving party bears the burden during trial, the nonmoving party must go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex v. Carrett*, 477 U.S. 317, 324 (1986). Issues of fact are genuine only if a reasonable jury, considering the evidence presented, could find for the nonmoving party. *See Anderson*, 477 U.S. at 247-51. In determining whether to grant summary judgment, the district court must remember that "credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* at 255. A mere scintilla of evidence in support of the non-moving party's position is insufficient, however, to defeat a motion for summary judgment. *See id.* at 252. If the evidence is merely colorable or is not significantly probative, summary judgment is proper. *See id.* at 249-50. Finally, the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a

6

whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.' " *Celotex*, 477 U.S. at 327.

<u>Analysis</u>

The question presented is whether General Asphalt was covered as an additional insured under the policies issued to Bob's by National Union and Lexington. To answer this question, this Court analyzes the language of the Subcontract, the Lexington Policy, and the National Union Policy. According to the Lexington Policy, an additional insured is defined as any entity given such designation in the Subcontract. The Subcontract, in pertinent part, reads: "Subcontractor shall furnish a certificate of insurance [which] name[s] General Asphalt Co., Inc. and Owner as additional insured as to general liability." (Subcontract, pg. 6). Thus, it is clear that General Asphalt was an additional insured under the Lexington Policy. However, General Asphalt was only covered under the Lexington Policy for "liability" arising out of "[Bob's] work." (Lexington Policy, pg. D-4). Additionally, the National Union Policy clarifies that the operative underlying policy was the Lexington Policy. That is, if the Lexington Policy—as the primary policy—provided coverage for General Asphalt as an additional insured for the accident, the National Union Policy—as the umbrella policy—also provided coverage for General Asphalt as an additional insured.

National Union asserts that neither the failure to place delineation devices (e.g. cones) around the asphalt roller in the clear zone nor the failure to transport the asphalt

7

roller to a secure location outside the clear zone, the conduct upon which the underlying

Complaint was based, were part of "[Bob's] work." The contract between General

Asphalt and the Miami-Dade Expressway Authority (the "Contract"), in pertinent part,

reads:

> 1. TRAFFIC CONTROL SHALL BE IN ACCORDANCE WITH THE
> PROJECT PLANS. THE CURRENT EDITION OF FLORIDA DOT
> ROADWAY AND TRAFFIC DESIGN <u>STANDARD INDEXES (600
> SERIES)</u> THE STANDARD SPECIFICATIONS FOR ROAD AND
> BRIDGE CONSTRUCTION AND THE MANUAL ON UNIFORM
> TRAFFIC CONTROL DEVICES AS MINIMUM CRITERIA.

(Pretrial Stipulation, pg. 12). Thus, General Asphalt contractually agreed to perform its

work in accordance with the Standard Indexes. Standard Index No. 600, in pertinent part,

reads:

> Above ground hazards [(i.e., any object, material, or equipment other than
> traffic control devices that encroaches upon the travel way that is located
> within the clear zone, is greater than 4" in height, and is firm and
> unyielding)] are to be considered work areas during working hours and
> treated with appropriate work zone traffic control procedures. During non-
> working hours, all objects, materials and equipment that constitute an
> above-ground hazard must be stored/placed outside the travel way and clear
> zone and be shield by a barrier or crash cushion.

(Index No. 600, pg. 2). The questions of whether the accident occurred during working

hours or whether the asphalt roller was within the clear zone are not dispositive.

Specifically, the instant action can be resolved as a matter of law by determining the

scope of "[Bob's] work."

This Court rules, as a matter of law, that the transportation of the asphalt roller (or

8

providing notice to General Asphalt that the asphalt roller needed to be transported) was

not part of "[Bob's] work." The Subcontract (dated May 1, 2002) merely states that

Bob's was responsible for the "Maintenance of Traffic." (Subcontract, pg. 1). This

phrase is neither given a definition nor provided any other meaning by the contract. The

parties do not dispute that Bob's completed a bid on March 27, 2002 (the "Bid"), for this

project. The parties only dispute whether the Bid is part of the Subcontract due to the fact

that the Bid was not signed by a General Asphalt representative. Even assuming the Bid

is not part of the Subcontract, this Court analyzes the Bid to ascertain meaning for the

ambiguous phrase "Maintenance of Traffic." *See Friedman v. Virginia Metal Prods.*

*Corp.*, 56 So.2d 515, 517 (Fla. 1952) ("Where either general language or particular words

or phrases used in insurance contracts are 'ambiguous', that is, doubtful as to meaning, or,

in the light of other facts, reasonably capable of having more than one meaning so that the

one applicable to the contract in question cannot be ascertained without outside aid,

extrinsic evidence may be introduced to explain the meaning."); *Gulf Cities Gas Corp. v.*

*Tangelo Park Serv. Co.*, 253 So.2d 744, 748 (Fla. 4th DCA 1971) ("Where the language of

a contract is ambiguous or unclear as to a particular right or duty, the court may receive

extrinsic evidence to the contract for the purpose of determining the intent of the parties

at the time of the contract."). The Bid, in pertinent part, reads:

> Following is a quote for <u>maintenance of traffic</u> required for the above job.
> The lump sum price includes the post-mounted construction signs,
> barricades, cones, hi intensity lights, and target arrows.  It also includes the
> labor for the set-up and pick-up of 1) either a single or double lane closure

9

or 2) a ramp closure.

(Bid, pg. 1) (emphasis added).  The only labor referred to in the bid concerns the set-up and pick-up of lane and ramp closures.  Furthermore, the Bid quoted a price for the "Lump Sum Maintenance of Traffic" as $92,500.00—the same amount codified in the Contract.  Thus, the Bid constitutes valuable insight into the intent of the contracting parties.  It would be unreasonable for a jury to find that the responsibility for the subsequent removal or transportation of the asphalt roller would reside with a party other than General Asphalt, who both owned the asphalt roller and initially placed it at the particular location where the accident occurred (each of which are undisputed facts).  The deposition of Robert A. Lopez Sr., who was an employee of General Asphalt, supports this legal conclusion.  He testified that "General Asphalt moves its own equipment [(i.e., the asphalt roller)]."  (Deposition, pg. 103).  In sum, this Court concludes that the phrase "Maintenance of Traffic" did not include the labor associated with transporting an asphalt roller owned by General Asphalt.

Similarly, this Court rules, as a matter of law, that the placement of delineation devices (e.g., cones) around the asphalt roller was not part of "[Bob's] work."  Again, the Bid lists the set-up and pick-up of lane and ramp closures as the only labor for which Bob's is responsible.  Thus, based upon these undisputed facts, a reasonable jury could not find that Bob's was responsible for the placement of delineation devices around the asphalt roller under any circumstances (e.g., working or non-working hours, within or

10

outside the clear zone, etc.). This legal conclusion is overwhelmingly supported by the record before this Court. First, during a deposition conducted on February 24, 2004, Robert A. Lopez, Sr. testified that his understanding was that General Asphalt did not require Bob's to place delineation devices around the asphalt roller. (Deposition, pg. 103). Second, in an affidavit given on December 30, 2004, Robert Lindquist, who was Vice President of a separate road and highway company in Florida and has personal knowledge of industry practices, stated that "[t]he term 'maintenance of traffic' in the road construction industry does not include the provision of inspection and maintenance of the clear zone with regard to equipment, material and supplies of the general contractor, or any contractor on the project, by a barricade company such as Bob's . . . in this case." (Affidavit, pg. 2, ¶ 6). Third, Thomas Brady, who is an employee of Bob's and drafted the Bid, stated in an affidavit that it was neither his understanding with regard to this particular contract nor general industry practice for the phrase "maintenance of traffic" to "include inspecting or maintaining the clear zone, whether that be during work hours or non-work hours." (Affidavit, pg. 2, ¶ 5). Fourth, in an affidavit given on December 30, 2004, Eric Runyon, who was Vice President of Bob's and negotiated the Subcontract on behalf of Bob's, stated that

> [t]he term 'maintenance of traffic' is a generic term. In the contracts Bob's [] enters into it means the provision of signage and barricades or other maintenance of traffic items such as arrow boards and variable message signs. It does not mean, and has never meant the provision of inspection and maintenance of the clear zone for the general contractor or other contractors on the project at any time, whether or not during work hours.

11

(Affidavit, pg. 4, ¶ 16) (emphasis added). In sum, this Court rules that no reasonable jury could find that the placement of delineation devices around the asphalt roller was part of "[Bob's] work."

Even assuming that a reasonable jury could find that placement of delineation devices was within "[Bob's] work," such a finding would be inconsequential due to the fact that the failure to place delineation devices around the asphalt roller was clearly not the cause—either actual or proximate—for the accident. On April 4, 2006, all parties in the instant action stipulated that

> regardless of fault, the failure to place the delineation devices around the asphalt roller was <u>not</u> the proximate cause of the injuries to Ms. Pearce. It is undisputed her vehicle was out-of-control, skidding sideways with no chance of recovery for over 130 feet before it crashed into the asphalt roller, and, it is undisputed the delineation devices would provide absolutely no cushion for the crash.

(Pretrial Stipulation, pg. 10). This Court finds that Great American's subsequent attempt to assert causation is unpersuasive. Great American fails to allege with any specificity how the placement of delineation devices around the asphalt roller would have prevented the accident. Thus, this Court further rules, in the alternative and as a matter of law, that the failure to place delineation devices around the asphalt roller was not the cause of the accident.

Accordingly, no reasonable jury could find "liability" against Bob's for the accident. Due to the fact that the underlying injuries did not arise from "[Bob's] work,"

General Asphalt was not covered as an additional insured for this accident under either the Lexington Policy or the National Union Policy. Thus, this Court rules that National Union is entitled to recover (from Great American) the amount of their contribution for the settlement of the claim against General Asphalt in the underlying litigation.

Additionally, this Court rules, as a matter of law, that Great American is not entitled to recover attorney fees and costs. Great American asserts that, because the Complaint for the underlying litigation alleged that General Asphalt was covered as an additional insured under the Lexington Policy, Lexington owed a duty to defend General Asphalt on all claims. *See Travelers Indem. Co. of Illinois v. Royal Oak Enters., Inc.*, 344 F.Supp.2d 1358, 1365 ("The insurer's duty to defend is not affected by the merits of the third party's claim or the likelihood that the claim will ultimately be successful; an insured is entitled to a defense by its insurer against even the most frivolous suit, so long as it describes an occurrence within coverage."). However, as previously discussed, this Court rules that the transgressions alleged in the Complaint for the underlying litigation were not part of "[Bob's] work." Thus, unlike *Travelers*, the Complaint did not allege an occurrence within coverage (even assuming the accuracy of the factual allegations). *See Lawyers Title Ins. Corp. v. JDC (Am.) Corp.*, 52 F.3d 1575, 1583 (11th Cir. 1995) ("If the alleged facts and legal theories do not fall within a policy's coverage, no duty to defend arises.) Therefore, Lexington did not have a duty to defend General Asphalt. *See Triple R Paving, Inc. v. Liberty Mut. Ins. Co.*, 510 F.Supp.2d 1090, 1094-95 (S.D.Fla. 2007)

13

(declining to issue a declaratory judgment granting attorney fees because the "claim at issue . . . did not obviously arise out of [the subcontractor's] operations, which are the only operations to which the indemnification clause in the contract applies").

Conclusion

Accordingly, after a careful review of the record and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that National Union's Motion for Summary Judgment (DE #125) and Lexington's Motion for Summary Judgment (DE #135) are hereby **GRANTED**.

DONE and ORDERED in chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 7th day of July, 2008.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

cc:     U.S. Magistrate Judge Barry L. Garber
        U.S. Magistrate Judge Ted E. Bandstra

        **Attorneys for Plaintiff**
        Robert Charles Grady
        Katz Barron Squitero & Faust
        100 NE 3rd Avenue

14

Suite 280
Fort Lauderdale, FL 33301
954-522-3636
Fax: 522-5119

Jeffrey N. Berman
2699 S. Bayshore Drive
Seventh Floor
Miami, FL 33133
305-856-2444
Fax: 305-285-9227

### *Attorneys for Defendants*

Cindy Lea Ebenfeld
Hicks & Kneale
9900 Stirling Road
Suite 101
Hollywood, FL 33024
954-624-8700
Fax: 624-8064

Jean Anne Kneale
Hicks & Kneale, P.A.
799 Brickell Plaza
9th Floor
Miami, FL 33131-2513
305-374-8171
Fax: 305-372-8038

Mark Hicks
Hicks Anderson & Kneale
799 Brickell Plaza
9th Floor
Miami, FL 33131-2513
305-374-8171
Fax: 372-8038

John Edward Herndon, Jr.

15

Conroy Simberg Ganon Krevans & Abel
325 John Knox Road
Atrium Building Suite 105
Tallahassee, FL 32303
850-383-9103
Fax: 383-9109

Joseph Laurenc Zollner
Guy E. Burnette, Jr. P.A.
3020 N Shannon Lakes Drive
Tallahassee, FL 32309
850-668-7900
Fax: (850)668-7972